# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. <u>8:12-cv-01421-MSS-AEP</u> |
| | ) | |
| v. | ) | |
| | ) | |
| RANDOLPH KNIGHT, BRYAN DECORSO, | ) | |
| and JOHN DOES 6, 7, 8, 9, 12, 13, 17, 18, | ) | |
| 36, 38, 40, and 42, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT RANDOLPH KNIGHT'S MOTION TO QUASH SERVICE OF PROCESS AND DISMISS COMPLAINT [CM/ECF 76]

### I.    INTRODUCTION

Plaintiff respectfully requests this Court deny the subject motion because Defendant was properly served on December 8, 2012.  Defendant's motion arguing that Plaintiff failed to timely serve Defendant is incorrect.  Significantly, Plaintiff was <u>unable</u> to serve Defendant until the summons was issued by the Clerk – a circumstance outside of Plaintiff's control.  As soon as was practicable after the summons was issued, Plaintiff served Defendant.  Next, Plaintiff properly pled the elements of a copyright infringement claim against Defendant.  Plaintiff Malibu Media is the owner of the copyrights and simply made a correctable error on its registration form, as Defendant points out.  There is no question that Plaintiff is the exclusive copyright holder.  The Eleventh Circuit has held in identical cases that ownership of copyrights is not disturbed by a mistake in its registration.  Finally, joinder is proper.  For the foregoing reasons, as explained more fully herein, this Court should deny the subject motion.

1

## II.    PROCEDURAL POSTURE

Plaintiff's Complaint was filed June 27, 2012.  On October 25, 2012 Plaintiff filed its timely Motion for Extension of Time Within Which it Has to Serve Defendants which was granted on October 29, 2012.  The Court allowed Plaintiff until November 26, 2012 to serve the Defendants.  On November 19, 2012 Plaintiff filed its Amended Complaint naming Defendant Doe 1 and also its proposed summons to be issued by the Clerk.  Because Plaintiff had not received the executed summons for Defendant by the November 26 deadline, however, Plaintiff filed its Second Motion for Extension of Time on November 26, 2012 requesting until December 26, 2012 to receive the summons from the Clerk and serve the Defendant.  It was not until November 29, 2012 that the summons for Defendant was issued by the Clerk of Court. Defendant was personally served with the Complaint on December 8, 2012.

## III.    DEFENDANT WAS TIMELY SERVED WITH THE COMPLAINT

Rule 4(m) of the Federal Rules of Civil Procedure provides that a defendant must be served "within 120 days after the complaint is filed . . . But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Fed. R. Civ. P. (4)(m)*.  As stated above, Plaintiff was unable to comply with this Court's order allowing Plaintiff until November 26, 2012 to serve Defendant because the summons was not issued until November 29.  Such circumstances, which were outside of Plaintiff's control, constitute good cause for the extension of time within which Plaintiff has to serve Defendant.

This Court has found that a plaintiff establishes "good cause" for its failure to serve a defendant if the failure is due to circumstances outside of the plaintiff's control.  "In determining good cause, courts have considered factors . . . such as sudden illness, natural catastrophe or evasion of service of process." *Pridemore v. Regis Corp.*, 2011 WL 9120 (M.D. Fla. 2011)

2

(internal quotation omitted). *See also Lepone-Dempsey v. Carroll County Com'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) ("Good cause exists only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.") Here, Plaintiff's inability to serve Defendant by November 26 was not caused by Plaintiff's inadvertence or negligence. Rather, Plaintiff was required to wait for the Clerk's office to issue the summons before Plaintiff could serve the Complaint on Defendant. Because the delay was reasonable and not indicative of a mere lack of diligence or other inexcusable delay, this Court should deny the subject motion. Defendant's motion is an attempt to avoid liability by pointing to a technicality over which Plaintiff was not responsible and could not avoid.

Further, "[e]ven if a district court finds that a plaintiff failed to show good cause, the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case." *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009) (internal citation omitted). The 11th Circuit has held that "Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause." *Horenkamp v. Van Winkle And Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005). Even if this Court finds that Plaintiff has not demonstrated good cause for the delay in serving Defendant, the motion should be denied because of the nature of this case. To explain, because of the nature of online infringement, Plaintiff does not know who it is serving at the time the case is filed. Thus, the Rule 4(m) clock starts running even during Plaintiff's preliminary efforts to obtain the Defendants' identities in order to be able to serve them. It is often difficult for Plaintiff to meet an original Rule 4(m) deadline because of the amount of time it takes to uncover the identities of the Defendants, amend the complaint to name the Defendants, and effect service of process.

Further, judicial economy is best served by denying the motion.  If the Court were to dismiss the case at this procedural juncture, Plaintiff would have to re-file the case against an already named and served Defendant resulting in a duplication of the Court's and Parties' time, effort, and expenses.  The eight (8) day period between the time that the Clerk issued the summons and the time that Defendant was served does not warrant starting this case again from scratch.

## IV.   PLAINTIFF STATED A PRIMA FACIE CLAIM FOR COPYRIGHT INFRINGEMENT

### A.   Legal Standard for a 12(b)(6) Motion to Dismiss

When analyzing a Rule 12(b)(6) motion to dismiss, "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."  *Speaker v. U.S. Dept. of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  However, allegations pled as legal conclusions are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).  The complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And, it must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id.*  "[A] well-pled complaint survives a motion to dismiss even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely."  *Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 (S.D. Fla. 2012) at *2 quoting *Twombly,* 550 U.S. at 556.  "The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint."  *Id.*

**B.  Plaintiff Pled Defendant Used the BitTorrent Protocol to Infringe Plaintiff's Copyrights**

"To establish copyright infringement, [all that one must prove is] ownership of [a] valid copyright and copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Services, Co., Inc.,* 111 S.Ct. 1282, 1296 (1991); *McCaskill v. Ray*, 279 Fed. Appx. 913, 916 (11th Cir. 2008) (same).   Plaintiff stated a prima facie claim for infringement against Defendant.  "Each of the Defendants copied and distributed a website containing 16 federally registered copyrighted movies owned by Plaintiff." *Amended Complaint* at ¶ 2.  "An internet screen shot from www.copyright.gov of each of the 16 Registrations is attached as Composite Exhibit B." *Id.* at ¶ 12.  "Each of the Defendants copied and distributed, through the BitTorrent protocol, the exact same torrent file, as evidenced by a single unique Cryptographic Hash Value, which contained Plaintiff's 16 registered works." *Id.* at ¶ 15.  "Each Defendant installed a BitTorrent Client onto his or her computer." *Id.* at ¶ 19.   "[E]ach Defendant went to a torrent site to upload and download Plaintiff's copyrighted Works." *Id.* at ¶ 31.  "Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent Protocol and the internet to reproduce, distribute, display, or perform Plaintiff's copyrighted works." *Id.* at ¶ 39.  "IPP used forensic software . . . and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions." *Id.* at ¶ 40.  "IPP extracted the resulting data . . . reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith . . ." *Id.* at ¶ 41. "The IP addresses, Unique Hash Number and hit dates . . . accurately reflect . . . and show: (A) each Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number." *Id.* at ¶ 42.  "By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered

5

Works that are original." *Id.* at ¶ 50. "Plaintiff did not authorize, permit or consent to Defendants' copying of its Works." Id. at ¶ 51. "As a result of the foregoing, each Defendant violated Plaintiff's exclusive [copy]right[s]." *Id.* at ¶ 52.

### C. <u>Plaintiff is the Owner of the Copyright Registrations</u>

#### 1. <u>Copyright Policy Provides for Correction of Mistakes on Registrations</u>

Plaintiff Malibu Media owns the copyrights to the movies in this suit. When registering the movies, Malibu Media erroneously indicated in its registration form that it owns the copyrights through a work made for hire agreement instead of indicating that it owns the copyrights through an assignment. Plaintiff has since submitted a form CA, and the innocent error will be corrected as a matter of routine procedure by the Copyright Office.

Eleventh Circuit case law, as well as the Copyright Office, provides that an error in registration is not fatal to a Plaintiff's claim and may be corrected. *See Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1531 (11th Cir. 1994) (Holding a copyright was valid when it was improperly registered as a work for hire but instead conveyed through oral assignment later memorialized in writing the Eleventh Circuit noted "[c]opyright ownership and the effect of mistaken copyright registration are separate and distinct issues.")

Indeed, in *Arthur Rutenberg Homes, Inc.,* the Eleventh Circuit examined the exact issue as here – the work had accidently been registered as a work for hire when it was actually obtained through assignment. *Id.* at 1532. The Eleventh Circuit held that as long as the plaintiff was the owner "at the time of its original copyright registration, it was a proper claimant under the regulation, and its registration, therefore, was valid." *Id.* at 1533. Brigham Field, co-owner of Malibu Media created the movies in this suit. In February of 2011 he created Malibu Media to house his copyrights. He assigned Malibu Media ownership once the limited liability

6

corporation was formed.  There is no dispute that Malibu Media owned the copyrights at the time of registration, and owns them now.

Copyright Office regulations provide a specific process to correct this mistake.  The Copyright Office regulations state:

> (4) Where registration has been made for a work which appears to be copyrightable but after registration the Copyright Office becomes aware that, on the administrative record before the Office, the statutory requirements have apparently not been satisfied, or that information essential to registration has been omitted entirely from the application or is questionable, or correct deposit material has not been deposited, the Office will correspond with the copyright claimant in an attempt to secure the required information or deposit material or to clarify the information previously given on the application.

*37 C.F.R. § 201.7.*   Further, the Copyright Office manual states: "[w]here an employment-for-hire statement was either omitted, given in error, or stated erroneously, the Copyright Office will accept an application for supplementary registration." Copyright Office, *Compendium II: Compendium of Copyright Office Practices* § 1507.5(c) (1984).  Plaintiff has already submitted its corrections to the United States Copyright Office and expects the Copyright Office to correct them within the next few months as routine procedure.

In addition to the Eleventh Circuit, three other circuit courts have also ruled on this exact issue.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010) ("[E]ven if the films were works for hire, the district court was correct that Gasper simply made a 'mistake in listing himself as the author' on the copyright registration forms. That mistake does not constitute a basis to invalidate the copyright."); *Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) ("[C]ase law is overwhelming that inadvertent mistakes on registration certificates do not ... bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by

making the misstatement."); *Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 412 (2d Cir. 1970) (Corporation's President was listed as author on copyrights instead of the Corporation, the Second Circuit held that the error was "minor, was made in good faith, and could not have affected the action taken by the Copyright Office").

       2.   **The Eastern District of Pennsylvania Recently Addressed This Exact Issue**

The Eastern District of Pennsylvania recently addressed this exact issued regarding the same Plaintiff *and* copyright registrations, finding that Malibu Media is the valid owner of the registrations and has standing to bring its claims for infringement.

> The Court concludes Plaintiff has the requisite standing to bring the claims in the Amended Complaints. Even if Defendants themselves had standing to contest the validity of the Assignment—which it appears they do not, given the lack of disagreement regarding the Assignment among the original parties—the background context of Malibu's formation, the Affidavit of Colette Field, the text of the Written Assignment from September 13, 2012, and the text of the Clarification Agreement from December 5, 2012, all demonstrate that Brigham Field intended to transfer and did transfer complete and exclusive rights in his copyrighted works to Malibu when the company was formed on February 8, 2011. Malibu was the "exclusive" owner of the Brigham Field copyrights as of that time, and it has standing to sue for infringement of those works presently.

*Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 (E.D. Pa. 2013) at *8.  *See also Malibu Media, LLC v. John Does 1-13*, 2:12-cv-12586-PJD-MJH [CM/ECF 61] (E.D. Mi. 2013) ("the Court concludes that Malibu had standing to file this lawsuit against Defendants").

**V.**   **JOINDER IS PROPER**

Fed. R. Civ. P. 20 permits joinder when plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action."  Rule 20(a) not only permits joinder when there is the same transaction

or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (*quoting 6A Wright, Miller & Kane § 1581*).   "Here, <u>the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences.'</u>   Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied." *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012) (emphasis added). As explained more fully herein, Plaintiff's Complaint alleges more than "merely committing the same type of violation in the same way" because the operation of the BitTorrent protocol necessitates a cooperative effort by peers in a swarm.   Defendant's argument that "the only similarity among the Defendants would be that they violated the same statute or acted in the same manner" fails to acknowledge the level of interconnectedness present between the BitTorrent peers.

### A.   The Infringement Occurred Through a Series of Transactions

Under Fed. R. Civ. P. 20(a), "series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

### i.    Plaintiff Properly Pled a Series of Transactions

Plaintiff alleges that its investigator, IPP Limited, was able to receive a piece of Plaintiff's copyrighted movie from each Defendant.  In order for Plaintiff's investigator to have received this piece, each alleged infringer must have had part of Plaintiff's movie on his or her computer and allowed others to download it.

There are four possible ways that each Defendant may have received the piece of the movie that was sent to IPP Limited.  First, the Defendant may have directly connected with the initial seeder and downloaded a piece of the file directly from the initial seeder's computer. Second, the Defendant may have directly connected to and received a piece of the movie from a seeder who downloaded the movie from the initial seeder or other infringers.   Third, the Defendant may have connected to or received a piece of the movie from other Defendants that received the movie from the initial seeder or other infringers.   Fourth, the Defendant may have connected to or received a piece of the movie from other infringers who downloaded from other Defendants, other infringers, other seeders, or the initial seeder.

"In other words . . . at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP." *Patrick Collins, Inc. v.*

*John Does 1-21*, 2012 WL 1190840, at *5 (E.D. Mich. 2012).  Each defendant participated in the same series of transactions.

> [E]ven if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied at this stage of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

*Raw Films v. John Does 1-15*, 2012 WL 1019067, at *4 (E.D. Pa. 2012).  These transactions are all reasonably related, not just because Defendants used BitTorrent, but also because Defendants utilized the computers of others to download the same file, and allowed others to access their computer to receive it.

### ii.    The Supreme Court Allows Joinder When The Defendants Do Not Directly Interact With Each Other

In *United States v. Mississippi*, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact.  *Id.* at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color.  On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142.  Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, the defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  In doing so, the Defendants all acted under the same exact system.

**B.   The Time Period For Infringement**

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.   Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.   Even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. 2012) (emphasis added). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

"While the period at issue may . . . appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time."   *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012).   Time constraints should not impact that the infringements occurred through a series of transactions.   "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged

BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. 2012).

**C.   <u>There Are Common Issues of Fact and Law</u>**

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact.  The claims in this case satisfy that requirement because "Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."  *Nu Image, Inc. v. Does 1-3, 932*, 2012 WL 1255189 (M.D. Fla. 2012).  *See also Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 (E.D. Pa. 2012) ("Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws. Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied."); *Patrick Collins Inc., v. John Does 1-43*, 2:11-cv-04203-FSH-PS (D. NJ 2012); *Call of the Wild Movie v. Does 1-1,062*, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011) ("factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant.")

**D.  Joinder Promotes Judicial Efficiency and Doe Defendants Cannot Demonstrate<br><u>Prejudice At This Stage</u>**

Although Defendant argues that "joinder would prejudice the Defendants," numerous courts have found the opposite to be true.  "[J]oinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 344 (D.D.C. 2011) (quoting *London–Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d

153, 161 (D.Mass.2008)).  *See also Patrick Collins, Inc. v. John Does 1-33*, 2012 WL 415424 (D. Colo. 2012) ("joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency."); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 at FN 6 (S.D.N.Y. 2012) ("courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts.")  "Given the common core of allegations, the substantial overlap of the particular claims, and the logical interconnection of several of the [claims]," judicial efficiency is best served by keeping the Doe Defendants joined together in a single case.  *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1325-26 (11th Cir. 2000) (*overruled on other grounds by Manders v. Lee,* 338 F.3d 1304 (11th Cir. 2003)).

Although Doe Defendants may later assert different factual and legal defenses, this does not defeat joinder at this stage of the litigation.  "The Court recognizes that each Defendant may later present different factual and substantive legal defenses, but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)."  *K-Beech Inc., v. John Does 1-57*, Case 2:11-cv-00358-CEH-SPC, at *12 (M.D. Fla. 2011)  "[C]onsolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy. Should that process reveal disparate defenses as to each party, the Court would consider such a fact relevant on a later review of joinder's propriety."  *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa. 2012). *See also Patrick Collins, Inc. v. John Does 1-15*, 2012 WL 415436 (D. Colo. 2012) (same) (quoting *Call of the Wild Movie,* 770 F.Supp.2d at 343).

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: March 15, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipsomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*